CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
07/20/2018
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| LES CHRISTOPHER BURNS,<br><br>    *Plaintiff*<br><br>v.<br><br>CHRISTOPHER LEE COOK<br><br>and<br><br>ASHLEY NEESE,<br><br>    *Defendants*. | CASE NO. 6:18CV00073<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, LES CHRISTOPHER BURNS ("BURNS"), by the undersigned attorney, makes the following averments:

### NATURE OF THE CASE

1. This action arises from the violation of BURNS' civil rights by defendants CHRISTOPHER LEE COOK ("COOK") and ASHLEY NEESE ("NEESE"). BURNS was addicted to prescription pills and the crimes he committed in obtaining and sharing pills should have been punished by probation and treatment, instead of the nearly three and a half years he spent in jails and prisons after being maliciously prosecuted by the defendants before his case was dismissed

### JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of federal claims asserted in this action

pursuant to 28 U.S.C. §1331.

3. Venue is proper in this district under 28 U.S.C. §1391(b), because (i) each of the named defendants is a resident of the Western District of Virginia pursuant to to 28 U.S.C. § 1391(c)(2), and (ii) all of the events or omissions giving rise to the claim occurred in the Western District of Virginia pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

4. BURNS is an adult resident of Lynchburg, Virginia.

5. COOK is a former deputy sheriff of Bedford County, Virginia and was so employed at all times relevant to this complaint.

6. NEESE is a former Assistant United States Attorney and was so employed at all times relevant to this complaint.

## FACTS

7. In 2012, BURNS had suffered from a long-standing addiction to prescription pills and opiates. Despite his addiction, BURNS was married, had three children and operated a successful business.

8. BURNS frequently bought and traded pills with other addicts in order to sustain his habit, but he did not deal for financial gain or in large quantities and he did not administer drugs to anyone else. To the extent he traded pills with anyone, he did so only as an accommodation to other addicts.

9. BURNS was pulled over for suspicion of DUI by Officer Sarah Dryden of the Town of Bedford Police Department on October 26, 2012.

10. During the traffic stop, Dryden discovered contraband, including prescription pills and drug paraphernalia in BURNS' vehicle.

11. In lieu of arresting BURNS, Dryden referred BURNS to COOK to work as a confidential informant. COOK was then an investigator with the Bedford County Sheriff's Department and assigned to Operation Pain Train, an investigation of illegal distribution of prescription medication in Bedford, Virginia.

12. COOK knew that BURNS was a low-level user who was familiar with some of the targets of Operation Pain Train and he began to use BURNS as a confidential informant.

13. COOK initially told BURNS that BURNS needed to participate in only three controlled buys of narcotics in Bedford in order to "work off" the minor charges that could have arisen from the contraband discovered in the search of BURNS' car by Officer Dryden[1].

14. However, COOK became enamored of BURNS' wife and began frequenting BURNS' home and in order to justify continuing to visit BURNS' home, COOK reneged on his commitment to BURNS and informed him that BURNS would be required to participate in more than three controlled buys of narcotics.

15. COOK demanded that BURNS participate in dangerous controlled buys of large quantities of narcotics outside of Bedford involving other confidential informants.

16. During a failed controlled buy of narcotics in Roanoke involving several other confidential informants, a memory card from an audio recorder went missing. BURNS did not remove or dispose of this memory card.

17. COOK, without evidence, accused BURNS of removing and disposing the memory card and BURNS denied doing so.

---

1 Burns was never charged with any crimes related to this contraband.

18. COOK became enraged at BURNS and told him that he needed to cooperate and admit to stealing the memory card or COOK would seek federal charges against him and also bring charges against BURNS' wife. BURNS told COOK that the controlled buys were jeopardizing the safety of his family and that he could not do them any longer.

19. Acting with malice, COOK testified falsely to the federal grand jury that BURNS had confessed to distributing suboxone.

20. COOK, while while driving his police cruiser drunk on duty and in the course of his investigation during Operation Pain Train in December, 2012, lied to, threatened and exposed himself to E.C., a witness before the grand jury.

21. A few days later, COOK threatened to strip search E. C. when he arrested her.

22. The grand jury returned an indictment alleging that BURNS distributed and conspired to distribute narcotics.

23. BURNS was arrested at his home by COOK on March 28, 2013 and taken to the Bedford Sheriff's Department headquarters. COOK had his gun pointed at BURNS and told him "I got your little ass now" when he arrested BURNS. NEESE was also present when BURNS was arrested.

24. COOK and NEESE traveled to the Bedford Sheriff's Department to interrogate BURNS in an interrogation room. The interrogation room was equipped with audio and video recording equipment. NEESE also recorded the interrogation on her phone.

25. During the interrogation BURNS denied any distribution of narcotics and again disavowed disposing of the memory card during the controlled buy.

26. COOK and NEESE became frustrated because BURNS was not telling them what they

wanted to hear, so COOK called BURNS' wife and coerced with threats to drive to the sheriff's office, where COOK and NEESE threatened to arrest her, send her children to DSS custody and to cause her to lose her teaching license unless she convinced BURNS to tell them what they wanted to hear, in other words, to admit guilt.

27. COOK and NEESE had BURNS removed from the interrogation room and positioned next to his wife for the sole purpose of using his wife as a hostage to coerce a false confession from BURNS.

28. Yielding to this immense pressure, BURNS falsely confessed to taking and disposing the memory card.

29. COOK began to question BURNS about the details of the removal and disposal of the memory card, but BURNS was unable to provide these details because he had falsely confessed to taking the memory card and was unaware of the circumstances surrounding its removal and disappearance.

30. COOK became frustrated and enraged that BURNS could not provide the details related to the removal and disappearance of the memory card and asked BURNS why he could not provide these details. BURNS replied that he could not provide the details because he did not remove or dispose of the memory card and that he had only falsely confessed to doing so because COOK threatened BURNS' wife and children.

31. During the interrogation, BURNS did not admit to administering or distributing narcotics for profit, but freely admitted to sharing pills with other addicts and to abusing pills himself.

32. The interrogation was recorded, but either COOK or NEESE caused the recording to be

lost or destroyed.

33. BURNS did not sign a Miranda waiver or a written statement.

34. In court proceedings on the indictment alleging distribution and conspiracy, BURNS' defense counsel pressed COOK to produce the purported Miranda waiver, recordings and contemporaneous notes of the statements BURNS made during the interrogation and also to produce the purported audio and video recordings of the purported distribution of suboxone by BURNS.

35. Because they could not produce this non-existent information and rather than admitting that it did not exist, COOK and NEESE sought and obtained a superseding indictment that omitted the allegation that BURNS distributed narcotics but retained the allegation that BURNS conspired with others to distribute narcotics.

36. In order to obtain the original and the superseding indictments, NEESE and COOK deliberately solicited the false testimony of BURNS' purported co-conspirators in order to maliciously prosecute BURNS when they knew they had no reason to believe BURNS had obstructed justice or that he had distributed narcotics for financial gain, much less probable cause to believe that he had done so. COOK and NEESE threatened and pressured witnesses into falsely testifying that BURNS had injected them with narcotics and that he had distributed large quantities of narcotics for financial gain.

37. NEESE withheld exculpatory evidence from BURNS and from the Court regarding COOK's misconduct in office. NEESE intentionally misled the Court regarding the nature and extent of COOK's misconduct, by filing pleadings and by engaging in argument that omitted the fact that COOK had sexually abused a grand jury witness or

that he had lied to and threatened the witness during the course of the investigation

38. NEESE advised COOK to, and assisted him in, procuring false evidence against BURNS before BURNS was indicted and arrested.

39. At BURNS' jury trial on the superseding indictment, COOK testified falsely that BURNS had confessed.  COOK was not impeached during trial because NEESE, through deliberate misrepresentation and omission, sought and obtained a limiting order that prohibited BURNS' defense counsel from impeaching COOK on this basis of his misconduct with EC, the grand jury.

40. COOK also testified falsely that BURNS had obstructed justice by removing and discarding the memory card from the audio recorder used in the failed controlled buy of narcotics.

41. Several purported co-conspirators, coerced by COOK or NEESE, testified falsely that BURNS distributed narcotics.  The testimony of several of these witnesses deviated substantially from the statements they made before they were intimidated by COOK or NEESE.

42. The jury convicted BURNS of conspiracy and the Court sentenced him to 136 months of imprisonment, enhancing BURNS' sentence substantially on the basis COOK's false testimony that BURNS obstructed justice.

43. During the pendency of his appeal, and upon remand to this Court, BURNS discovered the partial extent of COOK's and NEESE's misconduct and, on the basis of this discovery, he moved for dismissal of the superseding indictment or, alternatively, a new trial.

44. The Court granted BURNS a new trial and removed NEESE from the case because of her misconduct.

45. New prosecutors were assigned to the case and immediately moved the Court to dismiss the superseding indictment with prejudice.

46. This Court dismissed the superseding indictment with prejudice on July 21, 2016.

47. BURNS was incarcerated continuously from the date of his arrest on March 28, 2013 until his release on July 21, 2016.

48. BURNS suffered damages as result of his malicious prosecution and resulting confinement, including loss of liberty, fear, apprehension, stress, depression, loss of consortium, alienation from his wife and children, humiliation and severe mental anguish.

### COUNT ONE – MANUFACTURING FALSE EVIDENCE BY CHRISTOPHER LEE COOK – SECTION 1983 VIOLATION OF FIFTH AMENDMENT DUE PROCESS RIGHT

49. All previous paragraphs of this complaint are incorporated herein by reference and are realleged as if restated.

50. COOK was a state actor who acted under color of state law when he knowingly, intentionally and maliciously manufactured and presented false evidence against BURNS as described in the preceding paragraphs.

51. By manufacturing and presenting false evidence against BURNS, COOK violated BURNS' right to Due Process under the Fifth Amendment to the United States Constitution.

52. COOK caused damage to BURNS before, during and after trial, by knowingly, deliberately and maliciously using his own false testimony and the false testimony of

witnesses he coerced, to procure an indictment against BURNS that resulted in BURNS' arrest and incarceration.

53. COOK caused damage to BURNS by knowingly, deliberately and maliciously using his own false testimony and the false testimony of the witnesses he coerced to persuade a jury to convict BURNS.

54. COOK caused damage to BURNS by using his own false testimony to persuade the Court to enhance BURNS' sentence.

**COUNT TWO – MANUFACTURING FALSE EVIDENCE BY ASHLEY NEESE – VIOLATION OF BURNS' FIFTH AMENDMENT DUE PROCESS RIGHT**

55. All previous paragraphs of this complaint are incorporated herein by reference and are realleged as if restated.

56. NEESE acted under color of federal law and in her capacity as an Assistant United States Attorney at all times when she advised COOK to manufacture and procure false evidence against BURNS during the course of the investigation conducted in Operation Pain Train.

57. NEESE acted under color of federal law in her capacity as an Assistant United States Attorney at all times when she manufactured false evidence against BURNS during the investigation conducted in Operation Pain Train.

58. Although she prosecuted BURNS, NEESE is not absolutely immune from suit for damages incurred by her misconduct in (i) advising COOK or other law-enforcement officers in the course of the investigation in Operation Pain Train to manufacture and use false evidence against BURNS, (ii) participating in manufacturing and using false evidence against BURNS in the course of the Operation Pain Train investigation and (iii) destroying the recordings of BURNS' interrogation that were made before the

superseding indictment was rendered.

59. NEESE acted with actual malice against BURNS in the course of the above-described misconduct.

60. NEESE violated BURNS' clearly established right to due process by the misconduct described in the preceding paragraphs.

**COUNT THREE – MALICIOUS PROSECUTION BY COOK IN VIOLATION OF BURNS' FOURTH AMENDMENT RIGHTS**

61. All previous paragraphs of this complaint are incorporated herein by reference and are realleged as if restated.

62. The Fourth and Fourteenth Amendments to the United States Constitution provide clearly established protected rights to all persons, including freedom from the deprivation of liberty without due process of law.

63. COOK violated BURNS' clearly established right to freedom from the deprivation of liberty when COOK arrested BURNS on March 28, 2013 on the basis of an indictment that COOK knew had been procured through his own perjury and through the perjury of other witnesses that he knew he had suborned or that had been suborned by NEESE.

64. COOK violated BURNS' clearly established right to freedom from the deprivation of liberty when COOK, with actual malice, continued to prosecute the case against BURNS until the case was dismissed prejudice on July 21, 2016.

**COUNT FOUR – CONSPIRACY TO DEPRIVE BURNS' OF HIS CIVIL RIGHTS**

65. All previous paragraphs of this complaint are incorporated herein by reference and are realleged as if restated.

66. COOK and NEESE, each residents of Virginia, did by engaging in the conduct described in the preceding paragraphs, conspire to deprive BURNS of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. They also, in the conduct described in the preceding paragraphs, conspired to deprive BURNS of his right to be free from the deprivation of liberty guaranteed by the Fourth Amendment to the United States Constitution.

67. COOK AND NEESE caused damage to BURNS by conspiring to deprive BURNS of his rights.

## DAMAGES

68. BURNS demands from COOK and NEESE, jointly and severally, (i) compensatory damages in the amount of THREE MILLION FIVE HUNDRED THOUSAND DOLLARS ($3,500,000) or such additional amount as may be proven by the evidence, (ii) exemplary damages in the amount of SEVEN MILLION DOLLARS ($7,000,000) and such additional amount as may be proven by the evidence, (iii) statutory recovery of the reasonable attorney fees incurred in bringing this action, (iv) nominal damages, (v) declaratory judgment that the plaintiff's civil rights were violated by the defendants, (vi) injunctive relief requiring the defendants to refrain from violating the civil rights of the defendant and to be trained to avoid depriving the civil rights of others and (vii) such additional and other relief as the Court may deem appropriate.

## JURY TRIAL DEMAND

69. Plaintiff LES CHRISTOPHER BURNS hereby demands a jury trial.

Respectfully submitted,

**LES CHRISTOPHER BURNS**
By Counsel

**JAMES RIVER LEGAL ASSOCIATES**
**7601 Timberlake Road**
**Lynchburg, Virginia 24502**
**P (434) 845-4529**
**F (434) 845-8536**
**mvalois@vbclegal.com**


**By: /s/ M. Paul Valois**
    **M. Paul Valois, Esquire**
    **Counsel for Defendant**
    **Virginia State Bar No. 72326**