# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | | |
|---|---|---|
| **LES CHRISTOPHER BURNS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:18CV00073 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CHRISTOPHER LEE COOK, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*M. Paul Valois, James River Legal Associates, Lynchburg, Virginia, for Plaintiff; David G. Barger, Greenberg Traurig, LLP, McLean, Virginia, for Defendant Ashley Neese.*

In this action for violation of civil rights under 42 U.S.C. § 1983, plaintiff Les Christopher Burns claims that one of the defendants, Ashley Neese, violated his constitutional rights when, as an Assistant United States Attorney for the Western District of Virginia, she allegedly manufactured false evidence and destroyed evidence during an investigation and prosecution of his alleged involvement in narcotics distribution. Neese has moved to dismiss Burns' action against her for failure to state a claim upon which relief can be granted, contending that she is entitled to either absolute or qualified immunity, or in the alternative

that a *Bivens*-type remedy is not available in this context. For the reasons that follow, I will grant Neese's motion.

I.

The Amended Complaint alleges the following facts as to Burns' claims against Neese, which I must accept as true for the purpose of deciding the Motion to Dismiss.

Les Christopher Burns has long suffered from an addiction to prescription medications and opiates. As of 2012, Burns frequently bought and traded small quantities of pills with other addicts to sustain his addiction, but he did not sell drugs for financial gain, and he did not administer drugs to anyone else.

On October 26, 2012, Town of Bedford Police Officer Sarah Dryden stopped Burns' vehicle on suspicion that he was driving under the influence. During the traffic stop, Officer Dryden discovered prescription medications and drug paraphernalia in Burns' vehicle. In lieu of arresting Burns, Officer Dryden referred him to Bedford County Deputy Sheriff Christopher Lee Cook, who was involved in Operation Pain Train, an investigation into the illegal distribution of prescription medications in Bedford, Virginia.

Deputy Sheriff Cook knew that Burns was a low-level prescription medication user who was familiar with some of Operation Pain Train's targets, so he began using Burns as a confidential informant. As an informant, Burns

participated in a number of controlled narcotics buys for Deputy Sheriff Cook. During one of the controlled buys, a memory card from an audio recorder was lost, and Deputy Sheriff Cook accused Burns of removing and disposing of it, which Burns denies. Burns alleges that Deputy Sheriff Cook became enraged at him and told him that he needed to admit to stealing the memory card or he would seek federal charges against Burns and his wife. Thereafter, Burns told Deputy Sheriff Cook that the controlled buys were jeopardizing the safety of his family and he could no longer do them.

On March 21, 2013, a grand jury indicted Burns on charges of distributing and conspiring to distribute narcotics. Deputy Sheriff Cook arrested Burns on March 28,[1] and Neese, then an Assistant United States Attorney, was also present during the arrest. After the arrest, Deputy Sheriff Cook and Neese interrogated Burns, who falsely confessed to removing and disposing of the memory card. He also truthfully admitted that he had abused narcotics and shared them with other addicts, but he did not admit to administering narcotics or distributing them for profit. Neese recorded the interrogation on her phone, and the interrogation room also had audio and video recording equipment. However, either Deputy Sheriff Cook or Neese lost or destroyed the recording. On December 19, 2013, a grand

---

[1] Burns' Amended Complaint alleges that he was arrested on March 28, 2013; however, in Burns' bond hearing on the same day, Deputy Sheriff Cook testified that Burns had been arrested and interviewed on March 27.

jury returned a Superseding Indictment charging Burns only with conspiring to distribute narcotics.

Burns alleges that in order to obtain the original and superseding Indictments, Neese and Deputy Sheriff Cook solicited false testimony from Burns' alleged co-conspirators that he had distributed narcotics for financial gain, and they threatened and pressured witnesses into falsely testifying that Burns had distributed large quantities of narcotics for financial gain and injected them with narcotics, without reason or probable cause to believe he had done so. Burns also alleges that Neese advised and assisted Cook in procuring false evidence against Burns before he was indicted.

At Burns' jury trial on the Superseding Indictment, several of his purported co-conspirators testified falsely that Burns had distributed narcotics. This testimony deviated substantially from earlier statements they had made before Neese and Deputy Sheriff Cook had allegedly threatened and pressured them into testifying that Burns had distributed narcotics for profit. Burns was convicted of conspiring to distribute narcotics, and the court sentenced him to 136 months imprisonment.

Burns appealed his conviction, and during the pendency of his appeal, he discovered the partial extent of Neese and Deputy Sheriff Cook's alleged misconduct. Based on this discovery, he moved to dismiss the Superseding

Indictment or for a new trial. The court found that Neese had intentionally withheld exculpatory evidence from the defense and the court, and it granted Burns' motion for a new trial.[2] New prosecutors were assigned to the case, and they moved to dismiss the Superseding Indictment with prejudice. The court granted the motion on July 21, 2016. Burns had been incarcerated continuously from his arrest on March 28, 2013, until his release on July 21, 2016.

Burns alleges he suffered damages because of his prosecution and confinement, including loss of liberty, fear, apprehension, stress, depression, loss of consortium, alienation from his wife and children, humiliation, and severe mental anguish.

Count Two of Burns' Amended Complaint alleges that Neese violated his Fifth Amendment due process rights when she manufactured, procured, and used false evidence against him, advised Deputy Sheriff Cook to do the same, and when she destroyed the recordings of Burns' interrogation. Count Four of the Amended Complaint alleges that Neese and Deputy Sheriff Cook conspired to violate Burns' Fifth and Fourteenth Amendment due process rights, and his Fourth amendment right to be free from the deprivation of liberty, when they engaged in the above conduct. Burns seeks monetary damages and attorney's fees from Neese. Neese

---

[2] Burns' present charges against Neese do not stem from this improper withholding of evidence, nor is the withheld evidence at issue here.

has moved to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion to Dismiss is ripe for decision.[3]

II.

Federal pleading standards require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss, the complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a pleading, the court accepts as true all well-pled facts and construes those facts in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591

---

[3] Defendant Neese filed and served electronically her Motion to Dismiss on November 26, 2018. Under the court's Local Rules, any response to the motion was due no later than December 10, 2018. W.D. Va. Civ. R. 3(c)(1). Burns filed his response in opposition to Neese's motion on December 16, 2018, without seeking leave of court for his tardiness. Neese then moved to strike Burns' opposition and requested that the court treat her Motion to Dismiss as unopposed or conceded. Burns' counsel has represented that he understood the obligation to file a timely response, but incorrectly calculated the due date. Under the circumstances, I will excuse the delay, *see* Fed. R. Civ. P. 6(b)(1)(B), but in any event, I am still obligated to consider the motion on its merits, even if the untimely response was unexcused. *See Altizer v. Town of Cedar Bluff,* No. 1:14CV00007, 2014 WL 2535057, at *2 (W.D. Va. June 5, 2014); *cf. Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) (holding that when considering a motion for summary judgment, the court "must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law").

I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

F.3d 250, 255 (4th Cir. 2009). A complaint does not need detailed factual allegations to survive a motion to dismiss; however, it must have more than labels and conclusions or a recitation of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A.

I will first address Burns' claims regarding the alleged videotape of his interrogation. Burns asserts that Neese violated his Fifth Amendment due process rights when she destroyed the recording and she violated his Fourth, Fifth, and Fourteenth Amendment rights when she conspired with Deputy Sheriff Cook to do the same. I find that Burns' Amended Complaint fails to allege facts sufficient to make his claims plausible. The Amended Complaint alleges that the interrogation room had recording equipment and Neese had recorded the interrogation on her phone, but "either COOK or NEESE caused the recording to be lost or destroyed." Am. Compl. ¶ 35, ECF No. 4. Although Burns' claims are based on the contention that Neese destroyed the recording, his factual allegations raise the possibility that it was lost or that Deputy Sheriff Cook was at fault. Accordingly, they do not allow me to infer more than a mere possibility of misconduct by Neese, and I will grant the Motion to Dismiss as to these claims.

B.

Neese argues that the remaining claims regarding her alleged involvement in manufacturing and procuring false evidence against Burns should be dismissed because she is entitled to absolute immunity from suit for this conduct. She contends that she is entitled to absolute immunity because almost all of the alleged conduct occurred during the post-probable-cause phase of Burns' prosecution, and Burns' attempts to characterize it as occurring during the investigatory phase are merely conclusory.

In actions alleging constitutional violations by federal officials, "prosecutors enjoy absolute immunity for conduct 'intimately associated with the judicial phase of the criminal process.'" *Lyles v. Sparks*, 79 F.3d 372, 376 (4th Cir. 1996) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).[4] The judicial phase of the criminal process includes initiating a prosecution and presenting a case, *Imbler*, 424 U.S. at 431, and it extends to "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial," *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). "Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made."

---

[4] "Although *Imbler* and several of the other immunity cases cited herein were decided in the context of suits against state officers under 42 U.S.C. § 1983, their analysis extends to *Bivens*-type suits brought directly under the Constitution against federal officials." *Lyles*, 79 F.3d at 376 n.4.

*Id.* Efforts to control the presentation of a witness's testimony are also included in the judicial phase of the criminal process. *Imbler*, 424 U.S. at 430 n.32; *see also Carter v. Burch*, 34 F.3d 257, 261–63 (4th Cir. 1994) (affirming the district court's grant of absolute immunity for a prosecutor's conduct when coaching a witness on how to testify).

In some instances, however, a prosecutor undertakes administrative and investigative duties that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings. *Buckley*, 509 U.S. at 273 ("There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand."). Actions taken when performing these duties are entitled to qualified, rather than absolute, immunity. *Id.*

Determining whether a prosecutor is acting as an investigator or an advocate depends in part on whether the prosecutor possesses probable cause for an arrest. *Id.* at 274; *see also Goldstein v. Moatz*, 364 F.3d 205, 215 (4th Cir. 2004) ("In a pre-probable-cause investigation, . . . a prosecutor exercises no more discretion than a police officer and thus should enjoy no more protection than qualified

immunity.").[5] Thus, when a prosecutor manufactures evidence in order to obtain probable cause to arrest a suspect, the prosecutor's actions constitute an investigatory function. *See Hill v. City of N.Y.*, 45 F.3d 653, 663 (2d Cir. 1995); *see also Willis v. Blevins*, 957 F. Supp. 2d 690, 699 (E.D. Va. 2013) ("[T]he manufacturing of evidence by a prosecutor, unlike the presentation of false evidence, is at best only protected by qualified immunity."). The official seeking absolute immunity bears the burden of showing that immunity is justified for the function in question. *Burns v. Reed*, 500 U.S. 478, 486 (1991).

Neese's alleged role in manufacturing evidence comes close to the line between a prosecutor's duties as an advocate — preparing to present evidence before a grand jury, including making efforts to control the presentation of a witness's testimony — and as an investigator — searching for corroboration that might give probable cause to recommend that a suspect be arrested. However, I find that Burns has alleged conduct that is investigatory. Read in the light most favorable to him, his allegations state that Neese and Deputy Sheriff Cook solicited false testimony from alleged co-conspirators that Burns had distributed narcotics for financial gain, and they threatened and pressured witnesses into falsely testifying that he had distributed large quantities of narcotics for financial gain and

---

[5] However, a probable cause determination does not guarantee a prosecutor absolute immunity for all subsequent actions. *Buckley*, 509 U.S. at 274 n.5. Even after such a determination, a prosecutor may engage in investigative or administrative work that is entitled only to qualified immunity. *Id.*

injected them with narcotics, without any reason to believe he had done so. Neese and Deputy Sheriff Cook worked together to procure false evidence against him, with Neese advising and assisting Deputy Sheriff Cook, and they did this in order to obtain the indictment against him. As alleged, Neese did not have probable cause to arrest Burns when this conduct occurred; instead, she was searching for corroboration that might give her probable cause to indict him when she had no other evidence to do so.

      Moreover, Neese has not met her burden of showing that absolute immunity is justified for this conduct. She acknowledges that she would be entitled only to qualified immunity for her alleged role in manufacturing evidence before she had probable cause to arrest Burns. However, she asserts that Burns' claim that this conduct was investigatory is conclusory and meant to circumvent absolute immunity. Although the facts in support of this claim are minimal, I find that they make it plausible that Neese's conduct was investigatory. Burns alleges that the conduct occurred before he was indicted and for the purpose of obtaining the indictment. He alleges that Neese and Deputy Sheriff Cook had no reason to believe the content of the allegedly fabricated evidence — that he had distributed large quantities of narcotics for financial gain and injected others with narcotics — and he denies having done so. Instead, he alleges that Deputy Sheriff Cook knew only that he was a low-level prescription medication user who was familiar with

targets of Operation Pain Train. Taken together, these allegations make it plausible that when Neese allegedly solicited false testimony and threatened and pressured witnesses into providing false testimony, she did so in search of evidence to indict Burns. Accordingly, Burns' allegations regarding Neese's role in manufacturing evidence are not precluded by absolute immunity.

C.

Neese contends that even if she is not entitled to absolute immunity for the conduct at issue, the court should dismiss Burns' claims because she is entitled to qualified immunity. Neese argues that qualified immunity applies to this conduct because Burns' allegations do not show that his constitutional rights were violated.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine if qualified immunity applies, the court must consider (1) "whether a constitutional right would have been violated on the facts alleged," and (2) whether "the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).[6] In determining whether

---

[6] The court may consider these questions in either order. *Pearson*, 555 U.S. at 236.

the right was clearly established, the relevant inquiry is "whether it would be clear to an objectively reasonable officer that his conduct violated [the] right." *Washington v. Wilmore*, 407 F.3d 274, 281 (4th Cir. 2005) (internal quotation marks and citations omitted).

Here, Burns alleges that Neese manufactured evidence and advised and assisted Deputy Sheriff Cook to do the same, and he alleges that this conduct violated his Fifth Amendment due process rights and his Fourth Amendment right to be free from deprivation of liberty.[7] Accordingly, I will characterize the constitutional right at issue as "'the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity.'" *Id.* at 282 (quoting *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000)). For the facts to allege a violation of this right, they must allege both that Neese fabricated evidence and that Burns' loss of liberty — his incarceration — resulted from the fabrication. *See Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014). To show that Burns' incarceration resulted from the fabrication, the facts must support both but-for and proximate causation. *Id.* But-for causation exists when the harm at issue would not have occurred absent the relevant conduct, and

---

[7] Burns also contends that Neese's alleged conspiracy with Deputy Sheriff Cook violated his Fourteenth Amendment due process rights; however, I do not address this alleged violation here because Burns' claims against Neese do not involve any state action. Moreover, although Burns references the Fourth Amendment, I will construe his claims against Neese as based only on the Fifth Amendment because they do not challenge his arrest or allege any other unconstitutional searches or seizures.

proximate causation exists when "the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012) (citation omitted). But-for causation may be lacking when an intervening decision-maker would have brought about the deprivation of liberty even in the absence of the alleged misconduct. *Zahrey*, 221 F.3d at 352 n.8; *see also Massey*, 759 F.3d at 355–56 (finding that the causal nexus between the allegedly fabricated evidence and plaintiff's conviction and incarceration was insufficient because the evidence was not a central issue in the trial and the prosecution's case focused on other incriminating evidence).

Burns identifies two topics on which Neese and Deputy Sheriff Cook allegedly manufactured evidence — his distribution of narcotics for financial gain and his injection of others with narcotics. After reviewing the transcripts of Burns' bond hearing and trial,[8] I find that the causal nexus between the evidence at issue here and Burns' incarceration is insufficient to show that the latter resulted from the former. In particular, I find that independent decision-makers would have brought about Burns' incarceration even without this evidence.

---

[8] In ruling on a motion to dismiss, the court may consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may properly take judicial notice of matters of public record. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

As Burns alleges in his Amended Complaint, he was incarcerated continuously from March 28, 2013 to July 21, 2016. In Burns' March 28, 2013, bond hearing, the magistrate judge ordered that he be be detained while the charges against him were pending. The judge stated:

> The allegations that I believe that, frankly, carry the day for me are the fact that you live at home with your two young daughters, there are needles that are found in your house, and there's no reason — no evidence as to why needles should be in your house at this point in time. There is evidence and testimony from Deputy Cook that you are a heroin user. And that in the conversation with you yesterday, that you had admitted that, through your drug use, you had been involved with the injection of a minor with controlled substances.
>
> Based upon all of that, I do find there's clear and convincing evidence that you're a danger to the community.

Hr'g Tr. 25:6–17, *United States v. Burns*, No. 6:13CR00003 (W.D. Va. Mar. 28, 2013), ECF No. 271. Although the magistrate judge considered evidence that Burns had injected others with narcotics, he also made clear that he gave equal, if not more, consideration to other evidence when deciding whether to detain Burns. In a subsequent bond hearing on January 7, 2014, arising from the Superseding Indictment, the judge ordered that Burns continue to be detained. The judge reiterated the statement above and also found that Burns had become a flight risk. Accordingly, the facts do not show that Burns' pretrial incarceration would not have occurred absent the allegedly fabricated evidence.

In addition, a review of the testimony presented at Burns' trial reveals that any allegedly fabricated evidence was not the but-for cause of his conviction. Burns was tried on a charge of conspiring to distribute or possess with the intent to distribute controlled substances. As evidence of both the conspiracy and Burns' distribution of controlled substances, the government presented testimony from Burns' alleged co-conspirators and others who had received pills from him, totaling fifteen such witnesses. Many of these witnesses testified that Burns had sold them pills, and four testified that Burns had injected them with narcotics. Absent this testimony, however, a substantial amount of additional evidence supports Burns' conviction. These witnesses also testified that Burns had given them pills as gifts; they had traded pills with Burns; Burns had given them pills in the form of a loan, for which he expected to be repaid at a later time; and Burns had facilitated sales and exchanges of pills between them and others. Moreover, Officer Dryden testified that Burns had told her that he intended to give pills to two individuals. In light of the totality of the evidence presented at the trial, I cannot conclude that the jury would have acquitted Burns absent the allegedly fabricated evidence. Thus, the facts do not support a sufficiently strong causal connection between this evidence and Burns' incarceration.

Because the facts do not show that Burns' incarceration resulted from the allegedly fabricated evidence, they fail to allege a violation of Burns'

constitutional rights. Accordingly, qualified immunity protects Neese from liability for her alleged conduct, and I will grant her Motion to Dismiss as to Burns' remaining claims.

III.

For the foregoing reasons, it is **ORDERED** as follows:

1. Defendant Ashley Neese's Motion to Dismiss, ECF No. 23, is GRANTED and the action against said defendant is DISMISSED and the Clerk shall terminate her as a party hereto; and

2. Defendant Ashley Neese's Motion to Strike Burns' Untimely Memorandum in Opposition to Motion to Dismiss, ECF No. 27, is DENIED.

ENTER: February 12, 2019

/s/ *James P. Jones*
United States District Judge